# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2017-0257, <u>Appeal of Matthew Lowrie & a.</u>, the court on September 17, 2018, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The petitioners, Matthew and Katherine Lowrie and Mark and Deborah Pasculano, appeal a ruling of the New Hampshire Wetlands Council (Wetlands Council or Council) dismissing their appeal of a wetland Restoration Plan Approval issued by the New Hampshire Department of Environmental Services (DES) to their abutting neighbors, the respondents, Bruce and Mary McCarthy, for lack of jurisdiction. We affirm.

The relevant facts follow. In January 2016, DES issued a "Letter of Deficiency" to the respondents, after it had received complaints "relative to alleged turbid water . . . originating from [the respondents'] property after rain events and entering an adjacent stream and subsequently then entering Lake Sunapee in Sunapee." In its letter, DES identified several actions the respondents needed to take to correct the noted deficiencies including: reinstalling and maintaining erosion controls on the property; retaining an environmental professional certified in erosion and sediment control; submitting monitoring reports to DES; submitting a temporary stabilization plan to DES by February 2016; and submitting a permanent stabilization plan to DES by March 2016.

The letter stated that if compliance was not achieved within the time period set forth, "DES may take further action against [the respondents] including issuing an order requiring that the deficiencies be corrected and/or referring the matter to the New Hampshire Department of Justice for injunctive relief." In addition, DES indicated that its personnel "may re-inspect the property at a later date to determine whether [the respondents] have come into, and are maintaining, full compliance with applicable laws and rules," and that DES "reserve[d] the right to pursue monetary penalties for the deficiencies noted . . . as well as any deficiencies noted in subsequent inspections of the property." In response, the respondents engaged an engineering firm and submitted a "Temporary Stabilization Plan" in February 2016. DES approved the plan in a letter titled "TEMPORARY STABILIZATION PLAN APPROVAL." In April 2016, the respondents' engineer submitted a permanent stabilization plan.

Subsequently, the respondents' engineer submitted a wetland impact assessment and proposed restoration plan to DES. In September 2016, DES

approved the restoration plan in a letter titled "RESTORATION PLAN APPROVAL." The approved plan contained 20 specific conditions including restoring approximately 9,055 square feet of wetlands and requiring the submission by a qualified environmental consultant of monitoring reports to DES over an approximately one-year period "to document the success of the restoration and outline a schedule for remedial actions if necessary." The letter stated that the plan approval "does not relieve the [respondents] from the obligation to obtain other local, state or federal permits that may be required."

In October, the petitioners appealed to the Wetlands Council. The petitioners argued that DES acted unlawfully or unreasonably in approving the restoration plan for a variety of reasons including: "by not requiring an accounting of all of the destroyed wetlands"; "because [DES] did not require a sufficient mitigation ratio"; "by not requiring any permits" such as an alteration of terrain permit, a state wetlands permit, or a federal wetlands permit; by failing to require "hydrology calculations, water quantity/quality testing, and ongoing monitoring of water quantity/quality"; and by "not resolv[ing] disputes on existing wetlands." (Bolding omitted.) In sum, the petitioners were not satisfied that the restoration plan required the respondents "to fully address the stormwater runoff and wetlands destruction that they have unlawfully caused." The petitioners requested that the Wetlands Council "revoke the Approval and remand the matter to DES for further proceedings consistent with the Council's findings and rulings."

The respondents moved to summarily dismiss the petition, arguing, among other assertions, that because a Restoration Plan Approval is not a "department permitting decision" as defined by RSA 21-O:14 (Supp. 2017), the Wetlands Council lacked jurisdiction to hear the appeal. The Wetlands Council agreed, and, accordingly, granted the respondents' motion for summary dismissal. The petitioners unsuccessfully moved for reconsideration, and this appeal followed.

The petitioners raise two issues on appeal. First, they argue that the Wetlands Council erred by concluding that it lacked jurisdiction to hear the appeal because the "Restoration Plan Approval" issued by DES is a department permitting decision subject to appeal to the Council. Second, they argue that the restoration plan approval constitutes an "after the fact" wetlands permit subject to appeal to the Council. (Quotation omitted.)

Resolving these issues requires us to interpret the relevant statutory provisions. This court is the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. Appeal of Union Tel. Co., 160 N.H. 309, 317 (2010). In interpreting a statute, we first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. Unless we find that the statutory language is ambiguous, we need not look to legislative intent. Id. Furthermore, we interpret statutes in the context of the overall statutory

scheme and not in isolation. Id. We review an agency's statutory interpretation de novo. See id. at 314.

The Wetland Council's jurisdiction to hear appeals is set forth in RSA 21-O:5-a (Supp. 2017) and RSA 21-O:14. The Council is authorized to "hear all administrative appeals from department decisions made under RSA 482-A relative to wetlands . . . and [to] decide all disputed issues of fact in such appeals in accordance with RSA 21-O:14." RSA 21-O:5-a, V. A "department permitting decision" constitutes a "department decision" under RSA 21-O:14, I(c).

The statute defines a "department permitting decision" as "the department's final action to grant in whole or in part, with or without conditions, or to deny an application or other request for a license as defined in RSA 541-A:1, VIII." RSA 21-O:14, I(a). A "license" as defined in RSA 541-A:1, VIII (2007) is "the whole or part of any agency permit, certificate, approval, registration, charter or similar form of permission as required by law."

The petitioners first argue that the Wetlands Council erred "by denying it had jurisdiction under RSA 21-O:5-a to hear the appeal." (Bolding and capitalization omitted.) Their argument is as follows:

> The Wetlands Council has broad jurisdictional authority to hear "appeals from department decisions made under RSA 482-A relative to wetlands." RSA 21-O:5-a. Department Decisions are defined in RSA 21-O:14 to include "Department Permitting Decisions" and "Department Enforcement Decisions." RSA 21-O:14, I(c). Department Permitting Decisions are defined to include "the department's final action to grant in whole or in part, with or without conditions, or to deny an application or other **request for a license as defined in RSA 541:1, VIII**." RSA 21-O:14, I(a) (emphasis added). RSA 541-A:1, VIII defines a request for a license as "the whole or part of any agency permit, certificate, approval, registration, charter or similar form of permission required by law" (emphasis added).
>
> Putting this together, there is a right to appeal Department "Permitting Decisions," which [are] defined to include the "approval or similar form of permission" to do work where permission is required. By statute, work in wetlands areas requires approval and a permit. RSA 482-A:3.

(Ellipses omitted.)

We disagree that the DES decision at issue is a "department permitting decision." As set forth above, to qualify as a "department permitting decision,"

3

RSA 21-O:14, I(a) requires that such decision be the result of an "application or other request for a license." However, the respondents did not make an application or other request to DES; rather, the restoration plan approval was requested by DES. The use of the word "approval" did not turn DES's discretionary enforcement action into a department permitting decision. Accordingly, we are not persuaded that the DES restoration plan approval — a step taken by DES as part of its discretionary authority to investigate and enforce the wetlands laws under RSA chapter 482-A — constitutes a "department permitting decision" within the meaning intended by the legislature. See Appeal of Morgan, 144 N.H. 44, 48 (1999) (explaining that "decisions to investigate and prosecute are committed to the sound discretion of the agency" and that "[b]y virtue of its specialized knowledge and authority, the agency alone is empowered to develop that enforcement policy best calculated to achieve the ends contemplated by the legislature and to allocate its available funds and personnel in such a way as to execute its policy efficiently and economically" (quotation and brackets omitted)).

The petitioners next argue that the restoration plan approval constitutes an "after the fact" wetlands permit subject to appeal to the Wetlands Council. In support, they rely upon an administrative rule providing that "[a]pplications received after work is completed shall be subjected to the same review as any other application." N.H. Admin. R., Env-Wt 302.05. Thus, they contend, DES "cannot bypass the statutory requirement of a permit by simply issuing a document called a Restoration Plan Approval, thereby depriving [the petitioners] their rights of notice and appeal associated with the review and issuance of a wetlands permit."

The restoration plan approval was not an after-the-fact permit. The restoration plan approval was issued in response to the respondents voluntarily complying with the actions identified by DES in its letter of deficiency. To conclude that the restoration plan approval issued by DES constituted an after-the-fact permitting decision appealable to the Wetlands Council under RSA 21-O:14 requires a strained interpretation of the statutory language not supported by the plain meaning of the words used. See Appeal of Michele, 168 N.H. 98, 102 (2015) (explaining that we construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result).

Affirmed.

HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.

**Eileen Fox,
Clerk**

4